UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| V. | * | Cr. No. GLR-20-092 |
| AVERY HAWKINS | * | |
| Defendant | * | |
| * | | |
| For: AVERY HAWKINS | * | |

### DEFENDANT'S SENTENCING ARGUMENT

Avery Hawkins, by his undersigned counsel, hereby submits this sentencing argument in advance of his sentencing set before this Honorable Court for February 4, 2021, and states:

### INTRODUCTION

Avery Hawkins pled guilty on November 2, 2020, to being a prohibited person in possession of a weapon. Recovery of the gun from Hawkins's person was captured on video. Nevertheless, because of the circumstances of his stop and arrest, the defendant filed a substantial motion to suppress recovery of the weapon. After extensive negotiations with Government counsel, Hawkins agreed to give up his pending motion and plead guilty pursuant to a written plea agreement. ECF 25. Therein, the parties agreed on all terms save one—whether Mr. Hawkins committed one or two prior "controlled substance offenses" as defined under U.S.S.G. § 4B1.2(b), and therefore, whether his base offense level under U.S.S.G. § 2K2.1 is 20 or 24.

Mr. Hawkins does not dispute that his prior conviction for cocaine distribution constitutes a § 4B1.2(b) "controlled substance offense." However, Mr. Hawkins' prior

2009 Maryland conviction for possession with intent to distribute marijuana (referenced in presentence report (PSR), ¶ 28) is not a § 4B1.2(b) "controlled substance offense."

In 2009, the Maryland definition of "marijuana" included hem. The current § 4B1.2(b) "controlled substance offense" definition, which (for purposes of the analysis here) is controlled by the current version of the Maryland state marijuana definition, excludes hemp. Under the categorical approach, this mismatch disqualifies Mr. Hawkins' 2009 marijuana conviction as a § 4B1.2(b) "controlled substance offense."

Therefore, Mr. Hawkins' guidelines base offense level is 20 and his final offense level is 17.  When combined with his criminal history category of V, his guideline range is 46-57 months.  The parties have agreed to a binding sentence of 24 to 36 months.

Mr. Hawkins will first address the "controlled substance offense" issue necessary to determining the correct guideline range and then address why a variant sentence of 24 months is justified here.

> I. <u>Mr. Hawkins' 2009 Maryland State Conviction for Possession of Marijuana With the Intent to Distribute Is Not a Qualifying § 4B1.2(b) "Controlled Substance Offense" Under Current Law</u>

In 2009, Mr. Hawkins was convicted of Maryland possession with the intent to distribute marijuana.  Paragraph 28 of the PSR reports this conviction but provides no basis for concluding that Mr. Hawkins *actually* possessed marijuana with the intent to distribute it.  Rather, the facts attendant to that conviction indicate that he was a rear seat passenger in a vehicle and that he "had suspected marijuana in his lap and was attempting to conceal the same with his left hand. … A search of his person incident to arrest revealed $53.00 in U.S. currency."  Mr. Hawkins was not seen selling or in any way distributing any marijuana, nor is there any indication of the amount of marijuana that

could lead to an inference that his possession was not for personal use. And, there is no indication that the "suspected marijuana" was in fact marijuana; there is no indication that it was ever tested. . None of these weaknesses, however, are the reason that the conviction is not a qualifying controlled substance offense— rather the change in Maryland law, as further discussed below, is.

> **A. The categorical approach applies in determining whether a prior offense is a § 4B1.2(b) "controlled substance offense."**

U.S.S.G. § 2K2.1(a) provides a base offense level of 24 for a defendant with two prior felony convictions that constitute "crimes of violence" or "controlled substance offenses," and a base offense level of 20 for defendants with only one qualifying conviction. Section 2K2.1 adopts the definition of "controlled substance offense" listed in U.S.S.G. § 4B1.2(b). In turn, § 4B1.2(b) defines a "controlled substance offense" as the following:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

However, § 4B1.2 does not list the type of drugs covered under this "controlled substance offense" definition. Nonetheless, in *United States v. Ward*, 972 F.3d 364, 371 (4th Cir. 2020), the Fourth Circuit, looking to the ordinary meaning of "controlled substance offense," held that the term covers any drug "*regulated*" under applicable state law. In other words, as long as current state law prohibits the manufacture, possession, or use of drug, the drug is a "controlled substance offense" under U.S.S.G. § 4B1.2(b).

Under these terms, in determining whether a prior conviction qualifies as a "controlled substance offense," sentencing courts must employ the categorical approach.

See *Descamps v. United States,* 570 U.S. 254 (2013); *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013); see also *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (applying categorical approach to §4B1.2 "controlled substance offense" definition).   This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "controlled substance offense" *Descamps*, 261 (citation omitted); *Royal*, 731 F.3d at 341-42.   In addition, under the categorical approach, a prior offense is only a "controlled substance offense" if all the criminal conduct covered by a statute—"including the most innocent conduct"—matches or is narrower than the "controlled substance offense" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012).   If the most innocent conduct penalized by a statute does not constitute a "controlled substance offense," then the statute categorically fails to qualify as a § 4B1.2(b) "controlled substance offense."

> **B. A prior state offense can only qualify as a § 4B1.2 "controlled substance offense" if the elements of the prior offense *at the time of the conviction* match the *current* "controlled substance offense" definition, which in turn is determined by *current* state law.**

To be clear, § 4B1.2(b) refers to the *current* "controlled substance offense" definition, which is determined by *current* state law.   Specifically, the "[g]uidelines provide that a court must use the manual that 'is in effect on the date the defendant is sentenced' unless it would violate the Ex Post Facto Clause."   *United States v. Bautista*, __F.3d__, 2020 WL 733090, at *3 (9th Cir. 2020) (citing U.S.S.G. § 1B1.11); *see also id.* (*"*In imposing a sentence, the district court must consider the sentencing guidelines range 'that . . . [is] in effect on the date the defendant is sentenced.*"*) (citing 18 U.S.C. § 3553(a)(4))*; United States v. Miller*, __F.Supp.3d__, 2020 WL 4812711, at *7 (M.D. Penn. 2020) (same); *id.*

("the categorical approach is predominantly used to determine present-day implications of prior convictions").

Under the categorical approach, this Court must then compare the elements of the prior state crime as they existed *when the defendant was convicted* of that offense to the *current* § 4B1.2 definition, which, as discussed above, is determined by current state law for a state conviction.   See *United States v. Cornette,* 932 F.3d 204, 213 (4th Cir. 2019) (Whether a prior state conviction qualifies as an Armed Career Criminal Act predicate is determined by reviewing elements of the prior offense at the time of the prior conviction and comparing them to the ACCA "violent felony" definition in effect today); *Bautista*, 2020 WL 7330090, at *4 ("At federal sentencing, the district judge was required to compare the elements of the state crime as they existed when Bautista was convicted of that offense to those of the crime as defined [under the current § 4B1.2(b) "controlled substance offense" definition] at the time of federal sentencing.").

### C. Mr. Hawkins' prior Maryland marijuana offense, at the time of his 2009 conviction, criminalized hemp, but current Maryland excludes hemp; therefore, under the categorical approach, the prior conviction is not a § 4B1.2(b) "controlled substance offense."

Applying the above-discussed precedent here, Mr. Hawkins' prior 2009 marijuana offense (which criminalized hemp) is not a § 4B1.2 "controlled substance offense" under current Maryland law (which excludes hemp).

At the time of Mr. Hawkins's conviction in 2009, Maryland law included hemp in its definition of "marijuana."   Specifically, in 2009, the Maryland definition of marijuana included any plant that had any part of the (I) plant of the genus Cannabis, whether or not the plant is growing; (ii) the seeds of the plant; (iii) the resin extracted from the plant; and (iv) each compound, manufactured product, salt, derivative, mixture, or preparation of the

plant, its seeds, or its resin."   Maryland Code, Crim. Law, § 5-101(q)(1) (2009).   This definition did not exclude hemp, which is a Cannabis plant.   *Hemp Indus. Ass'n. v. DEA*, 333 F.3d 1082, 1085, n.2 (9th Cir. 2003).   Thus, a conviction under Maryland's criminal law for possession with the intent to distribute marijuana criminalized (i.e., regulated) the possession with intent to distribute hemp.

However, Maryland changed its marijuana definition in June, 2019.   As of June 1, 2019, the Maryland definition of marijuana expressly excludes hemp: "(2) "Marijuana" does not include: … (vi) hemp as defined in § 14-101 of the Agriculture Article".   Md. Code, Crim. Law, § 5-101(r)(vi).   Thus, while in 2009, a Maryland marijuana offense criminalized the possession with intent to distribute hemp, as of today, it does not.

Applying the required categorical approach, the "most innocent conduct" criminalized under a 2009 marijuana offense was possession with the intent to distribute hemp.   However, under current Maryland law, a marijuana offense excludes possession with intent to distribute hemp.   Due to this mismatch, the 2009 marijuana offense is not a § 4B1.2 "controlled substance offense" under the current federal guidelines and cannot be used to increase Mr. Hawkins's offense level under § 2K2.1 from 20 to 24.

The Ninth Circuit's decision in *Bautista* is instructive here.   In *Bautista,* 2020 WL 7330090, at *4, the Ninth Circuit held that a prior Arizona state offense for attempted transportation of marijuana categorically failed to qualify as a § 4B1.2(b) "controlled substance offense" because at the time of the Arizona conviction, Arizona state law did not exclude hemp, but the current § 4B1.2( b) "controlled substance offense" did.[1]   *See*

---

[1]   In the Ninth Circuit, in contrast to the Fourth Circuit, the type of drug criminalized under § 4B1.2(b) is defined by the federal Controlled Substances Act (21 U.S.C. 802) rather than state law as required in the Fourth Circuit.   *Compare Bautista,*2020 WL 7330090, at *3 *with Ward*, 979 F.3d at 371-72. Nonetheless, this makes no difference to

*also Miller*, 2020 WL 4812711, at *7-8 (holding that Pennsylvania marijuana offense, which included hemp at the time of the prior conviction, was not a § 4B1.2(b)(2) "controlled substance offense" under current law, which excluded hemp).

Likewise, this Court should find that Mr. Hawkins' 2009 Maryland marijuana conviction, which criminalized hemp at the time, is not a § 4B1.2(b ) "controlled substance offense" under the current law, which excludes hemp.

II. A Sentence of Twenty Four to Thirty Months Meets the Requirements of 18 U.S.C. 3555(a)

The first criterion under 18 U.S.C. sec. 3553(a) includes the nature and circumstances of this offense.  The defendant agrees that any illegal possession of a weapon is potentially dangerous.  However, not all weapon possessions are the same.  Here, Mr. Hawkins was walking with the gun in this pocket.  He was not selling drugs or involved in any narcotics transactions.  He did not point the gun at or threaten anyone with this weapon.  In the context of dangerous weapon possessions, which all of them are, Hawkins' was non-violent.

Mr. Hawkins' criminal record also warrants a variant sentence.  He has not had a criminal (non-traffic) conviction in ten years.  And, all of his criminal convictions occurred within an 18 month period when he was 19-20 years old; his distribution offense occurred on November 21, 2009, his marijauna offense a month later and his weapon possession was on March 7, 2011, all before his 21st birthday on October 8, 2011.  His criminal offenses are both old and committed when Hawkins was very young.  The past

---

the analysis here because the current marijuana definition under both the Controlled Substances Act and the Maryland statute excludes hemp. 21 U.S.C. 802(16)); Md. Code, Crim. Law, § 5-101(r)(vi).

ten years, until this offense, have not involved the criminal justice system.[2]

In addition, Mr. Hawkins has performed many of the activities one would encourage in society. He has a three year old daughter and is regarded as a good father. PSR, para. 62. He was employed fairly regularly over the past five years. See PSR at 74. More importantly, he has had no involvement with narcotics or illegal drugs since 2010. *Id*., at 68. Mr. Hawkins has shown that he can be a responsible, productive member of society.

The Court is also asked to consider the severity of Mr. Hawkins' pretrial detention. He has been at the Chesapeake Detention Facility (CDF) since April 3, 2020, for nearly the entire period of the pandemic. For most of that time, the fear of being infected was constant at CDF. That fear has been realized in recent weeks. CDF reports a nearly 65% positive infection rate among the tested inmates. The Virus is so prevalent at CDF that the facility can no longer even separate the infected from the healthy and those who are infected are not receiving treatment due to the overwhelmed medical staff. The Court is respectfully asked to consider the unusual severity of Hawkins confinement in deciding the appropriate additional punishment for this defendant.

III. <u>Mr. Hawkins Should Get Credit For All Time Served From the Date of His Arrest Except For Two Weeks For A Total of 490 Days</u>

Mr. Hawkins was arrested on these charges by Baltimore City law enforcement on September 26, 2019, and has been in custody since. Although his City charge was dismissed by the City (to be taken up by the instant federal prosecution) on February 26, 2020, he was not released to federal custody at that time. Instead he was held on behalf of charges in Harford County, where he arrived on March 9, 2020. He was released by

---

[2] Part of those years were spent in federal prison, from which he was released nearly six years ago. PSR, para. 29.

Harford county two weeks later, back to City custody again to be held awaiting pick up by federal authorities. He had his initial appearance in this court on April 3, 2020.

18 U.S.C. sec. 3585(b) addresses the credit a defendant receives for time served prior to his sentencing date:

> (b)Credit for Prior Custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—(1)as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Mr. Hawkins' credit arises from several parts of section 3585. First, under subsection (b)(1), he receives credit from March 23, 2020, to his sentencing date; the March date is the one on which City authorities began to hold him for federal authorities to pick him up. Second, he receives credit from September 26, 2019, to February 26, 2020, (five months) because he was held on this same charge and his City case was dismissed so he did not receive credit towards any other sentence for that time. Finally, he received credit from February 26, 2020, to March 9, 2020, (two weeks) because he was held by the City on the federal request pending the instant charges and, again, he did not receive credit towards any other sentence for that time. The only excluded period is from March 9 to March 23, 2020, when he was held by Harford County on unrelated charges. His total credit as of his sentencing date of February 4, 2021, will be 497 days.

The defendant is seeking a sentence of 24 months, which would be 730 days. If he served 85% of that amount, he would serve 620 days. As of the date of his sentencing, February 4, 2012, he will have already served 497 days, leaving 123 days, or a little over four months. In light of the prevalence of the Virus in both CDF and Bureau of Prisons

facilities, the defendant asks that the Court recommend to the Bureau that Hawkins complete his incarceration term as home confinement.

## CONCLUSION

Avery Hawkins respectfully requests this Court sentence him to 24 months incarceration with a recommendation that he complete his term in home confinement.

Respectfully submitted,

_____/s/_____
Richard Bardos, of Counsel
Schulman, Hershfield & Gilden, P.A.
1 East Pratt Street, 9th Floor
Baltimore, Maryland 21202
(410) 332 0850

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th of January, 2021, a copy of the foregoing Sentencing Argument was served electronically by ECF to: Office of the United States Attorney, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201.

\_\_\_\_\_/s/_____
Richard Bardos