

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Zachary B. Stendig*     *Suite 400*     *DIRECT: 410-209-4893*
*Assistant United States Attorney*     *36 S. Charles Street*     *MAIN: 410-209-4800*
*Zachary.Stendig@usdoj.gov*     *Baltimore, MD 21201-3119*     *FAX: 410-962-3124*

February 1, 2021

The Honorable George L. Russell, III
United States District Judge
United States Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

      Re    <u>United States v. Avery Hawkins</u>
             Crim. No. GLR-20-092

Dear Judge Russell:

      We are writing in advance of the sentencing in the above-captioned case, currently scheduled for February 4, 2021 at noon. The Government respectfully recommends that the Court impose a 30-month (two and a half year) prison sentence for the Defendant.

## Introduction

      On March 10, 2020, a Grand Jury in the District of Maryland issued an indictment charging the Defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). On November 2, 2020, the Defendant agreed to plead guilty to Count One of the indictment, Felon in Possession of a Firearm. The terms of the written plea agreement, entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), provided that a sentence in the range of 24 to 30 months of incarceration is the appropriate disposition of the case. For the reasons discussed below, the Government recommends a sentence of 30 months' imprisonment for the count of conviction under 18 U.S.C. § 922(g). The Government reserves the right to supplement this memorandum with evidence and argument at the sentencing hearing.

## Factual Background

      On September 26, 2019, Avery Hawkins possessed a firearm in Baltimore City after having been convicted of a felony punishable by one year or more imprisonment. During the late morning hours on that date, Mr. Hawkins walked through a shopping center in northeast Baltimore, Maryland. A Baltimore Police Department (BPD) on duty in the shopping center observed Mr. Hawkins, and, after a brief encounter based on Mr. Hawkins' actions, recovered from Mr. Hawkins' front pocket a firearm. The firearm was later identified as a Kahr PM9 9mm semi-automatic pistol, serial number 1C7946, loaded with seven rounds of ammunition. Neither the

firearm nor the ammunition were manufactured in the State of Maryland, and therefore affected interstate commerce prior to its recovery in Maryland. Mr. Hawkins agrees that prior to September 26, 2019, he knew he had been convicted of a crime punishable by a year or more imprisonment.

## Sentencing Procedure

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case. *Id.* at 51–52. A sentencing court should begin by calculating the applicable guidelines range. *Id.* at 49. After providing the parties with an opportunity to present argument, the district court should then consider the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49–50; *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011).

## Sentencing Guidelines and Criminal History Calculation

The Government agrees with the advisory sentencing guidelines and criminal history calculation set forth in the Second Revision of the Presentence Report (PSR). The Defendant's total offense level under the United States Sentence Guidelines is 21. PSR ¶ 23. The Defendant's criminal history is a category V. PSR ¶ 36.

Accordingly, with a total adjusted offense level of 21 and a criminal history category of V, the advisory sentencing guidelines range is 70-87 months' incarceration. PSR ¶ 78.

*The defense objection to the PSR applies the wrong legal standard.*

The Government submits that given the circumstances of this case, the Court should decline to adopt Mr. Hawkins' argument concerning his prior conviction for possession with intent to distribute marijuana. ECF 31 at 2-7. Upon reviewing the defense sentencing recommendation, the Government assessed the issue and does not agree with counsel's position. For example, contrary to the defense argument, the Fourth Circuit applies the modified categorical approach to Maryland controlled substance offenses. *United States v. Washington*, 629 F.3d 403, 408 (4th Cir. 2011). Counsel does not challenge the Guidelines calculation under this framework, relying instead on cases applying the categorical approach to either non-Maryland controlled substance statutes or statutes not concerning controlled substances.[1] *Washington* controls here, and there is no argument under the *modified categorical approach* that the PSR is wrong.

---

[1] In *United States v. Dozier*, the Fourth Circuit applied the categorical approach to the West Virginia general attempt statute, and the modified categorical approach to the state's controlled substance statute. 848 F.3d 180, 184-85, 187 (4th Cir. 2017). In *United States v. Ward*, the Fourth Circuit examined *Virginia*'s controlled substance statute, and not without criticism. 972 F.3d 364, 377 (4th Cir. 2020) (Gregory, C.J., concurring in judgment) (noting that the majority's use of the categorical approach conflicts with an earlier in time opinion applying the modified categorical approach to the same statute). *United States v. Royal* applied the categorical approach to Maryland's second-degree assault statute. 731 F.3d 333, 342 (4th Cir. 2013). *United States v. Torres-Miguel* examined a California statute proscribing willful threats to commit a crime that would result in death or great bodily injury. 701 F.3d 165, 166-67 (4th Cir. 2012).

*The Court should adopt the PSR's Guidelines calculations.*

Notwithstanding the defense's legal error noted above, the Court can, and should, adopt the PSR's calculations as correct without making new law here. As reflected by the PSR and the defense sentencing memorandum, the parties' agreed sentencing range is below a Guidelines calculation under either position. Further, neither party can appeal "the establishment of the advisory sentencing guidelines range" unless the sentence imposed is less or greater than the agreed upon range. *See* Plea Agreement, ¶ 12(b), ECF 25. This waiver is particularly important because sustaining counsel's objection would lead to ignoring *Washington* and ruling definitively that it will *categorically exclude* a predicate offense previously applied by this Court in various cases (including in the Defendant's 2012 federal sentencing), and doing all of that in this case where the Fourth Circuit lacks an opportunity to address the issues bound up in the objection.

Therefore, if the Court agrees that a sentence within the agreed upon range is appropriate, the Government proposes that the Court note the objection, adopt the PSR as written, and "determine that a ruling is unnecessary" on this issue because a decision even in Mr. Hawkins' favor will not affect sentencing. Fed. R. Crim. P. 32(i)(3)(B).

## **Factors Set Forth in 18 U.S.C. § 3553(a)**

The factors set forth in Title 18, United States Code, Section 3553(a) include: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentencing disparity among Defendants involved in similar conduct who have similar records. 18 U.S.C. § 3553(a).

To be clear, the agreed upon sentence is significantly below the lowest end of the advisory sentencing guidelines. Nevertheless, the Government submits that a sentence of 30 months of imprisonment is sufficient, but not greater than necessary, to accomplish the goals of the Sentencing Reform Act. In recommending this sentence, the Government acknowledges and recognizes the Defendant's early acceptance of responsibility, criminal history, and other personal characteristics. The Government does not believe, however, that a sentence lower than 30 months' imprisonment would be sufficient or appropriate in this case, particularly in light of several of the relevant Section 3553(a) factors that are discussed below.

### Nature and Circumstances of the Offense (3553)(a)(1))

The Defendant possessed a firearm in Baltimore City, which is plagued by gun violence. In 2019, when the defendant committed the instant offense, 309 of the 348 homicides resulted

from gunfire.[2] Unlawful possession of a firearm not only threatens public safety, but also perpetuates a cycle of violence that annually leads to the death or serious bodily injury of thousands of Baltimore residents. And, the fact that the Defendant had a loaded firearm while in a shopping center demonstrates his blatant disregard for the safety of those around him and the rule of law. Such criminal conduct requires a significant period of incarceration that reflects the seriousness of the offense, and a 30 month sentence accomplishes that objective.

### History and Characteristics of the Offender (3553(a)(1))

The Defendant's criminal history is a category V. He has, among others, one prior conviction for CDS distribution and a prior federal conviction for felon in possession of a firearm. The federal firearm offense occurred in 2011 and resulted in a sentence of 46 months. Despite these prior convictions, the Defendant has continued to engage in criminal activity.

However, significant mitigating factors weigh in favor of a 30 month sentence in the instant case. First, the Defendant has had limited contact with his father and is the product of a single-parent home. PSR ¶¶ 59, 60. Second, the Defendant is a father of a three year old girl. *Id.* at 60. Third, the defendant lost family and friends to violence in Baltimore. *Id.* The Defendant himself has also fallen victim to violence in Baltimore City as he was shot in the stomach in 2016. *Id.* at 64. Further, the Defendant has struggled with drug abuse throughout his life. *Id.* at 68-70. The PSR shows that the defendant has sought treatment but was discharged due to difficulties complying with the treatment center. *Id.* at 70. A sentence of 30 months is therefore necessary to address the Defendant's repeated and undeterred criminal conduct, but also appropriate in light of the mitigating factors discussed above. *See e.g.*, *United States v. Almenas,* 553 F.3d 27, 36-37 (1st Cir. 2009) (affirming downward variance of 43 months below the bottom of the guideline range based on combination of physical and mental disabilities).

### The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant (3553(a)(2))

In crafting the Defendant's sentence, the Court should take into account the seriousness of the Defendant's conduct and the need to promote respect for the law. The seriousness of the Defendant's crime should not be understated. As this Court is well aware, Baltimore has been and continues to be ravaged by gun violence. Nevertheless, the parties agreed to a range of 24-30 months' imprisonment that is significantly below the defendant's recommended guidelines range. However, the sentence in this case is the result of plea-bargaining between the parties. Plea bargains always entail risks for the parties: risks relating to what evidence would or would not have been admitted at trial and risks relating to how the jury would have assessed the evidence. *See Generally United States v. Poindexter*, 492 F.3d 263, 269 (4th Cir. 2007) (quoting *Blackledge v. Allison*, 431 U.S. 63, 71 (1970)) ("Plea bargaining is an 'important component[ ] of this country's criminal justice system."). Accordingly, in this case the plea agreement allocates the risks between the two parties as they see fit. *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993)

---

[2] Baltimore Sun, *Baltimore Homicides*, https://homicides.news.baltimoresun.com/?range=2019&cause=all (last visited July 31, 2020).

("Plea bargains rest on contractual principles," and each party should receive the benefit of their respective bargain).

It is well-established that "public policy strongly supports plea agreements . . . ." *United States v. Navarro-Botello,* 912 F.2d 318, 321 (9th Cir. 1990). Additionally, the Defendant pleaded guilty and did not force the government to expend significant resources litigating the case or preparing for trial. Lastly, while the Defendant has also received significant sentences in the past, his prior sentences were largely suspended. Thus, the recommendation of 30 months imprisonment, while below the recommended range, represents a significant term of imprisonment and provides just punishment for his crimes. Therefore, the Government recommends a sentence of 30 months' imprisonment for the Defendant.

## Conclusion

Based on the foregoing, the United States respectfully recommends a sentence of 30 months' imprisonment, which would be sufficient but not greater than necessary to comply with the section 3553(a) factors this Court must consider. We thank the Court for its consideration of this matter.

Respectfully Submitted,

Robert K. Hur
United States Attorney

*Zachary B. Stendig*
Zachary B. Stendig
Charles Austin
Assistant United States Attorneys

cc:   Counsel via ECF